**WATLOW ELECTRIC MANUFAC-
TURING COMPANY, et al.,
Plaintiffs–Respondents,**

v.

**Ronald M. WROB, Jr., a/k/a Mike Wrob,
an individual, and H.E.A.T., Inc., a Missouri Corporation, et al., Defendants–
Appellants.**

No. 66866.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 6, 1995.

Stephen M. Hereford, Clayton, for appellants.

Edward M. Goldenhersh, Gary A. Eberhardt, St. Louis, for respondents.

DOWD, Judge.

On August 17, 1992, Ronald M. Wrob, Jr., (Mike Wrob) and H.E.A.T., Inc., (HEAT), Appellants, filed a motion to vacate or modify the injunction which was ordered on June 4, 1991. In this injunction, Mike Wrob, Ronald M. Wrob, Sr.,[1] and HEAT were enjoined from competing with Respondents, Watlow Electric Manufacturing Company (Watlow) and its wholly owned subsidiary, Pacific Heater Corporation (Pacific). On January 29, 1993, the trial court entered an order denying Appellants' motion to modify, finding them in contempt, and awarding attorney's fees to Watlow and Pacific. Appellants appealed, but this court dismissed the appeal as premature finding the civil contempt order was not final because the trial court had not issued a warrant of commitment or imposed any fine. *Watlow Elec Mfg. Co. v. Wrob*, 878 S.W.2d 63 (Mo.App.1994). On August 5, 1994, the trial court entered a second order finding the contempt issue to be moot because Appellants had voluntarily complied with the terms of the injunction by no longer manufacturing or selling thermocouples. Appellants now appeal the trial court's refusal to modify or vacate the injunction and its award of attorney's fees. We affirm.

1. Ronald M. Wrob, Sr., is not a party to this appeal.

Other than Pacific, Watlow's wholly owned subsidiaries include Watlow St. Louis, Inc., Watlow Industries, Inc., and Watlow AOV, Inc. These entities are collectively referred to as the Watlow Group. Mike Wrob and Ronald M. Wrob, Sr., as employees of Pacific, had unrestricted access to Watlow and Watlow Group's trade secrets. They also had knowledge of the products and manufacturing equipment used by Watlow Group. They secretly incorporated HEAT while they were both still employed by Pacific in order to produce and sell heater products in competition with Watlow and Pacific. They also used false identities, entered into an equipment lease on Pacific's behalf with a fictitious entity they created, and forged signatures to misappropriate personal property belonging to Watlow and Pacific, including: product drawings, specifications, test data, customer lists, sales information, marketing information, and special equipment drawings and specifications. Using these materials, they began to manufacture products through HEAT which would be in direct competition with products of Watlow and the Watlow Group.

After learning that Mike and Ronald Wrob misappropriated several trade secrets, Watlow and Pacific entered into a release and settlement agreement whereby Mike Wrob, Ronald Wrob, and HEAT agreed to have an injunction entered against them. The injunction which was entered on June 4, 1991, essentially provided that Mike and Ronald Wrob were enjoined from competing with Watlow or any member of the Watlow Group for a period of five years.

In December 1991, Appellants began manufacturing thermocouples. According to the record, a thermocouple is a heat measuring device which can be manufactured either as a component of an electric heater or as a separate stand alone product. Both parties agree thermocouples were offered as components on the heaters manufactured by Pacific while Mike Wrob was working there. After Appellants received a letter from Respondents' counsel stating he believed they were violating the permanent injunction by manufacturing thermocouples, Appellants filed the motion to vacate or modify the injunction which is at issue in this case.

■ In Point I, Appellants allege the trial court erred in denying their motion to vacate the non-compete portion of its June 4, 1991 order because it is broader than necessary to protect Watlow's legitimate business interests; it unnecessarily restrains trade and is punitive; and it is vague, ambiguous, contradictory, and unenforceable under Missouri law. In response, Watlow argues we do not have jurisdiction to hear Appellants' appeal from the denial of their motion to modify or vacate the injunction because the injunction was entered into by consent of the parties. Permanent injunctions based on a condition subject to change are an exception to the time limitations of Rule 75.01 and may be vacated or modified in order to avoid unjust or absurd results when a change occurs in the factual setting or the law which gave rise to its existence. *Lee v. Rolla Speedway, Inc.,* 668 S.W.2d 200, 204 (Mo. App.1984); *Twedell v. Town of Normandy,* 581 S.W.2d 438, 440[1] (Mo.App.1979). A court of equity has the power to modify an injunction under these circumstances "whether the decree has been entered after litigation or by consent." *Humble Oil & Refining Co. v. American Oil Co.,* 405 F.2d 803, 812[2] (8th Cir.1969).

■ Returning to the specific issues raised in Point I, Appellants argue that "[t]o enforce a five year non-compete ban along with a prohibition against competition in products in which Watlow Group no longer competes serves no legitimate business purpose of Respondents and is an unwarranted restraint of trade and the only purpose of the ban is to punish." In arguing the trial court's order is unreasonable, Appellants rely on the standard used to determine the reasonableness of noncompetition provisions in employment contracts, not in court-ordered injunctions. However, Mike Wrob consented to having an order of permanent injunction entered against him in order to avoid being sued for violating the noncompetition provision of his employment contract. Further, a five-year injunction is reasonable in this case based on Mike Wrob's willful violation of his noncompetition agreement with Respon-

dents. *See, A.B. Chance Co. v. Schmidt,* 719 S.W.2d 854, 859[8] (Mo.App.1986) (court enjoined defendant, a former employee, from reproducing plaintiff's confidential process for a period of five years). Appellants also argue the injunction is vague and unenforceable under Rule 92.02(d) because it does not set forth the reasons for issuing the five-year injunction. However, the trial court's injunction specifically stated:

> *because of their intentional, willful and wrongful conduct in order to gain an unfair advantage in the marketplace,* that Defendants Ronald M. Wrob, Sr. and Ronald M. Wrob, Jr. are hereby permanently enjoined, for a period of five (5) years from the date of this Order, from in any manner, whether directly or indirectly, participating or assisting in the ownership, operation, management, marketing, employment, or in any way serving as an advisor, consultant, designer, engineer, sales representative, or independent contractor, or lender to, or in any way be connected with or involved with any 'business in competition' with Watlow Electric Manufacturing Company, Watlow St. Louis, Inc., Watlow Industries, Inc., Watlow AOV, Inc. or Pacific Heater Corporation (collectively known as the 'Watlow Group').

We find the language of the injunction sufficiently specific to meet the requirements of Rule 92.02.

■ Further, Appellants argue the manufacturing and selling of thermocouples is not covered by the June 4 injunction because (1) it is not a business in competition with Watlow Group; (2) the court's order does not include a definition of a "product" of the Watlow Group as used in the order; and (3) thermocouples are not a product or a component of a product manufactured or sold by Watlow Group. The findings of fact issued by the trial court in its injunction define the "products" of the Watlow Group by stating:

> The Watlow Group is primarily engaged in the engineering, designing, development, manufacturing and selling of cartridge heaters, tubular heaters, multi-cell heaters, pressurizer heaters, air gun heaters and a variety of other related or associated electric heating products and components (hereinafter referred to as "Products") for use in the industrial and commercial market.

Although thermocouples are not specifically referred to as a product of the Watlow Group, they are included under the language of the injunction either as an associated electric heating product or a component of an electric heating product.

Further, the manufacture of thermocouples is a "business in competition" with Respondents. The injunction defines "business in competition" to include any business which produces any product produced or sold by Watlow or a member of the Watlow Group during the five-year period immediately preceding the date of the injunction. At the hearing on Appellants' motion to modify the injunction, Appellants' counsel stipulated that members of Watlow Group manufactured thermocouples for use in conjunction with and as components of their heaters within the five-year period preceding the injunction. Point denied.

In Point II, Appellants argue the trial court erred in holding that thermocouples are covered by the June 4 order because the parties never intended to include thermocouples; and if thermocouples are included, this portion of the injunction is an unreasonable restraint on trade. These claims are meritless because, as previously discussed, the injunction covers thermocouples either as a product associated with electric heaters or as a component of the heaters manufactured by the Watlow Group.

Appellants also argue they should be allowed to manufacture thermocouples because Respondents encourage competition in thermocouples through its subsidiary which manufactures the parts necessary to manufacture thermocouples and sells them to other manufacturers. Appellants also allege they should be allowed to manufacture thermocouples because Respondents failed to establish at trial that they have protectible trade secrets in thermocouples or that Appellants were exposed to those secrets. We find these arguments meritless. Whether or not Respondents encourage competition in the area of thermocouples is irrelevant because the trial court correctly found Mike Wrob's willful violation of his noncompetition agreement with Respondents warranted the extensive

restrictions placed on Appellants. Point denied.

In their third point, Appellants allege the trial court erred in assessing attorney's fees against them because: (1) the parties' agreement only provided that attorney's fees were to be assessed if Respondents were required to enforce the judgment and there was no evidence as to what portion of Respondents' attorney's fees was incurred to enforce the judgment and what portion was incurred in resisting the Appellants' motion to amend; (2) the award of attorney's fees was based on a summary of Respondents' bills rather than the originals; and (3) the trial court's order of August 24, 1994, erroneously justifies the award of attorney's fees on the grounds that Appellants were in contempt at the time of filing of the motion to amend.

In the Settlement Agreement entered into by the parties, Appellants agreed that, "In the event Defendants or any one of them violates the Judgment, each Defendant so violating the Judgment agrees to pay Watlow's and Pacific's costs, attorney's fees and expenses incurred in seeking the enforcement of the Judgment." Respondents were required to attempt to enforce the injunction because Appellants violated the terms of the injunction, ignored written notification from Watlow's counsel, and initiated proceedings to have the injunction declared void. In its January 29, 1993 order, the trial court found Mike and Ronald Wrob in violation of the injunction for manufacturing and selling thermocouples. The court further stated, "This court takes notice and finds that Defendants filed numerous motions and pleadings in this proceeding, many of which were irrelevant or unnecessary, and which required Plaintiffs to respond and defend at further cost to Plaintiffs." The court then awarded Respondents $56,374 for attorney's fees and expenses incurred "in this post-trial action to enforce the Judgment and hold Defendants in civil contempt." Although the trial court's August 5, 1994 order purged Appellants of contempt, this order also specifically ruled the award of attorney's fees to be "final and appealable." The trial court's findings in awarding attorney's fees for Re-

spondents are properly supported by the record.

Further, the fact that a summary of the legal fees was admitted into evidence rather than copies of all of the original bills is irrelevant. The pages of the original bills upon which the summary was based were available to Appellants' counsel for inspection. In *Ahrens & McCarron, Inc. v. Mullenix Corp.*, the court held a summary is admissible if the records it is based on are admissible and available to the other party for inspection. 793 S.W.2d 534, 540 (Mo.App. 1990). Point denied.

In Point IV, Appellants allege the trial court erred in failing to respond to all of the Rule 73.01(a)(2) questions it posed. Rule 73.01(a)(2) states:

> If any party so requests before final submission of the case, the court shall dictate to the court reporter, or prepare and file, a brief opinion containing a statement of the grounds for its decision and the method of determining any damages awarded; and may, or if so requested by counsel, shall, include its findings on such controverted fact issues as have been specified by counsel.[2]

At the conclusion of the hearing on Appellants' motion to modify or vacate the injunction, they requested time to submit "some Rule 73 questions." Appellants then submitted a list of thirty-nine questions they requested the trial court to answer in its findings of fact. Appellants now allege the trial court failed to sufficiently answer all of their questions. We find the trial court's findings sufficiently addressed all of Appellants' questions. Further, while it is error for the court to fail to answer a properly raised Rule 73.01 question, such error will generally not require a reversal if the record is sufficient to support the trial court's findings. *Lattier v. Lattier*, 857 S.W.2d 548, 549[1, 2] (Mo.App.1993). Point denied.

Judgment affirmed.

CRANE, P.J., and CRANDALL, J., concur.

---

**2.** This Rule has since been amended, effective January 1, 1994.