MISSOURI HOSPITAL ASSOCIATION, and Associated Industries of Missouri, Respondent,

v.

AIR CONSERVATION COMMISSION OF the STATE OF MISSOURI,

and

Department of Natural Resources, Appellants.

Nos. WD 49575, WD 50601.

Missouri Court of Appeals, Western District.

June 27, 1995.

Jeremiah W. (Jay) Nixon, Atty. Gen., Timothy P. Duggan, Deborah Neff, Asst. Attys. Gen., Jefferson City, for appellants.

Lori J. Levine, Carson & Coil, P.C., Jefferson City, for Missouri Hosp. Ass'n.

Julie A. Emmerich, Frank L. Pellegrini, P.C., St. Louis, for Associated Industries of Missouri.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

ULRICH, Judge.

This consolidated appeal concerns two orders emanating from civil contempt proceedings to enforce a March 1993 permanent injunction. The injunction enjoined the Air Conservation Commission (ACC) and the Department of Natural Resources (DNR) from enforcing voided rules designed to control emissions from solid waste incinerators. The

March 1993 judgment was affirmed following appellate review in *Missouri Hospital Association v. Air Conservation Commission*, 874 S.W.2d 380 (Mo.App.1994). The May 1994 order permanently enjoined DNR and its Director, David A. Shorr, from proposing or promulgating rules on emissions from solid waste incinerators. The December 1994 order directed the DNR and the Director to pay the attorney fees of the Missouri Hospital Association and Associated Industries of Missouri resulting from the contempt proceedings.

Both orders are reversed.

### Background

In 1991, the Missouri Hospital Association and Associated Industries of Missouri (the Associations) sued for declaratory and injunctive relief on rules promulgated by the ACC and the DNR. The challenged rules, 10 CSR 10–6.160 and 10 CSR 10–6.190, regulated solid waste incinerators covered by the federal Clean Air Act. Those rules were promulgated under the ACC's rule making authority in § 643.050, RSMo 1986 (repealed and re-enacted 1992, 1993), of the state Air Conservation Law.

In March 1993, the trial court entered summary judgment for the Associations. In that judgment, the trial court declared 10 CSR 10–6.160 and 10 CSR 10–6.190 void on two grounds. First, the trial court determined that the ACC had exceeded its authority because § 643.055, RSMo 1986 (repealed and re-enacted 1992, 1994), limited the ACC's authority to promulgate any rules stricter that those required by the federal Clean Air Act. Second, the trial court found that the ACC and the DNR had failed to comply with the fiscal note requirements of the Administrative Procedure Law in chapter 536. The March 1993 judgment permanently enjoined the ACC and the DNR from enforcing the voided rules.

In December 1993, while the appeal was pending, the DNR and Director Shorr proposed and filed with the Secretary of State a new rule applicable to solid waste incinerators. The new rule, 10 CSR 80–5.020, was proposed under the DNR's rule making authority in § 260.225, RSMo 1994, of the state Solid Waste Disposal Law. In contrast, the voided rules had been promulgated under the ACC's rule making authority in § 643.050 that was limited by § 643.055 of the state Air Conservation Law. Like the voided rules, 10 CSR 80–5.020 was designed to regulate air emissions from solid waste incinerators. Unlike the voided rules, the proposed rule complied with the fiscal note requirements of the Administrative Procedural Law.

In January 1994, the Associations filed a motion for contempt against the ACC, the DNR, and Director Shorr in his official and personal capacities. The trial court issued its show cause order. Claiming the proposed rule to be essentially identical to the voided rules, the Associations maintained that the DNR was using the proposed rule as a subterfuge to evade the March 1993 judgment. In their motion for contempt, the Associations prayed for permanent injunction, for the sanctions of imprisonment and per diem fine, and for attorney fees. Later in January 1994, the Associations, with the agreement of all parties, struck the request for sanctions of imprisonment and per diem fine from their prayer for relief. The Associations dismissed the ACC from the contempt proceedings during the contempt hearing held in February 1994.

After the contempt hearing, the trial court determined the proposed rule to be essentially identical to the voided rules. In its May 1994 order, styled "Order of Civil Contempt," the trial court found that the DNR and Director Shorr had intentionally and knowingly violated the March 1993 judgment by proposing and filing the new rule. After holding the DNR and Director Shorr in contempt, the trial court issued a permanent injunction enjoining them from proposing or promulgating any rules essentially identical to the voided rules. In December 1994, the trial court ordered the DNR and Director Shorr, in his official and personal capacities, to pay the Associations' attorney fees totaling $12,088 which emanated from the contempt proceedings.

### I. Mootness of the Appeal

The Associations contend that the appeal from the May 1994 civil contempt order and injunction (WD 49575) is moot because the DNR and Director Shorr purged themselves

of the contempt by agreeing to comply with the May 1994 order.

Generally, an order of civil contempt does not become a final judgment for purposes of appeal until that order is enforced by actual incarceration or imposition of a per diem fine. *Watlow Elec. Mfg. Co. v. Wrob*, 878 S.W.2d 63, 65 (Mo.App.1994). A civil contempt case becomes moot and unappealable if the contemnors purge themselves of the contempt by complying the court's order. *Id.*

This appeal challenges the permanent injunction in the May 1994 order, not the contempt holding. Permanent injunctions are appealable. *White v. Mid–Continent Invs., Inc.*, 789 S.W.2d 34, 37 (Mo.App. 1990). Although the May 1994 order granted the requested permanent injunction, that order failed to dispose of all claims: the contempt holding was incomplete and the claim for attorney fees was taken under advisement. Nevertheless, the May 1994 order became appealable when the trial court expressly found no just reason to delay the appeal. *See, e.g., Clements v. Kolie*, 882 S.W.2d 299, 300 (Mo.App.1994). A judgment that fails to dispose of all claims becomes appealable when the trial court expressly finds no just reason for delay. Rule 74.01(b) The Associations' claim that appeal of the May 1994 contempt order and injunction is moot is denied.

## II. Appeal From Permanent Injunction

The DNR and Director Shorr challenge the trial court's jurisdiction to permanently enjoin them in the May 1994 order from proposing or promulgating new incinerator rules. They maintain that the trial court improperly issued in the contempt proceedings a second, expanded permanent injunction. In support, the DNR and Director Shorr note that the May 1994 order lacks the appropriate sanction to enforce compliance with the March 1993 judgment. They further emphasize that the May 1994 injunction expands the March 1993 injunction. They conclude that the trial court lost jurisdiction to modify the injunction in the March 1993 judgment once that judgment became final.

The first consideration is whether the permanent injunction in the May 1994 order constituted a second, expanded injunction. The trial court's pronouncement in an earlier proceeding may not be expanded by implication in a contempt proceeding. *Carter County R–1 School Dist. v. Palmer*, 627 S.W.2d 664, 665 (Mo.App.1982). Comparison of the language in the two injunctions reveals expanded restraints. The injunction in the March 1993 judgment permanently enjoined the ACC and the DNR

"from enforcing 10 CSR 10–6.160 and 10 CSR 10–6.190 as said rules are void and of no force and effect."

In contrast, the injunction in the May 1994 order directed that the DNR and the Director

"be stayed and enjoined from proposing or promulgating any rules or regulations, or taking any action including the filing thereof with the Secretary of State, or conducting any hearings thereon, of rules and regulations that are essentially identical to those found void by this Court in its judgment of March 11, 1993, including but not limited to proposed rule 10 CSR 80–5.020."

The restraint against *proposing or promulgating essentially identical rules* is broader than the restraint against *enforcing the voided rules*. The May 1994 injunction expanded the restraints imposed by the March 1993 injunction, and therefore constituted a second injunction.

The next consideration is whether the trial court properly issued the second, expanded injunction in the contempt proceedings. The purpose of a civil contempt order is to coerce compliance with an earlier court order. *City of Pagedale v. Taylor*, 790 S.W.2d 516, 518 (Mo.App.1990). Enforcement mechanisms available in civil contempt proceedings constitute either incarceration or payment of a per diem fine. *Angell v. Angell*, 674 S.W.2d 147, 149 (Mo.App.1984). The recognized civil contempt sanctions provide the means to coerce compliance. *See Gross v. Gross*, 557 S.W.2d 448, 453 (Mo.App. 1977). By the act of compliance the civil contemnor retains power to terminate imposed sanctions. *Wisdom v. Wisdom*, 689 S.W.2d 82, 87 (Mo.App.1985). A civil contempt order is incomplete if it fails to provide any sanction for enforcement. *Wrob*, 878

S.W.2d at 65. Further, without enforcement mechanisms, a civil contempt order is merely advisory. *See Chemical Fireproofing Corp. v. Bronska*, 553 S.W.2d 710, 714 (Mo.App. 1977).

Here, the Associations removed from their motion for contempt their prayer for imprisonment and per diem fine to coerce compliance with the March 1993 injunction. The prayer for relief in a motion for contempt delineates the scope of the contempt proceedings. *See* Joseph Moskovitz, *Contempt of Injunctions, Civil and Criminal*, 43 Colum.L.Rev. 780, 789–90 (1943). The removal of the prayer for contempt sanctions deprived the court of any mechanism for enforcing the injunction in the March 1993 judgment. The Associations argue that neither imprisonment nor per diem fine was appropriate. If they are correct, the civil contempt proceedings should have been dismissed. *See Angell*, 674 S.W.2d at 149–50.

In addition, an expanded injunction is not a recognized sanction in a civil contempt proceeding. *See id.* at 149. The May 1994 injunction provided no means to coerce compliance. Consequently, because the May 1994 order imposed no sanctions to force compliance with the March 1993 judgment, the contempt holding was incomplete and became merely advisory. *Wrob*, 878 S.W.2d at 65; *see Chemical Fireproofing*, 553 S.W.2d at 714.

The May 1994 injunction cannot stand as a modification of the March 1993 judgment. The trial court's inherent enforcement power applies to the judgment as originally rendered; the trial court's power to modify a judgment ceases when the judgment becomes final. *Lake Thunderbird Property Owners Ass'n, Inc. v. Lake Thunderbird, Inc.*, 680 S.W.2d 761, 763 (Mo.App. 1984). Here, the Associations sought relief beyond modification. They sought expanded injunctive relief. The Associations filed their motion in January 1994, months after the March 1993 judgment became final.

The May 1994 injunction cannot stand independently. Procedures for contempt and for injunction are distinctly different and involve different requirements for pleading, notice, and proof. For example, in a contempt proceeding, the trial court issues its show cause order requiring the party against whom the proceeding is initiated to show why the party should not be held in contempt for breech of the court's existing order, thereby showing compliance with the order. An action for injunctive relief requires the petitioner to prove entitlement to the relief requested and seeks a court order restricting future conduct. The Associations filed their motion for contempt. They did not file a separate count for injunctive relief. Instead, the Associations prayed for a permanent injunction as relief ancillary to the contempt holding.

In issuing the second injunction in the contempt proceedings, the trial court exceeded its authority. The trial court may exercise its contempt power only to compel compliance with obligations arising from a pre-existing judgment or decree. *Meiners v. Meiners*, 858 S.W.2d 788, 791 (Mo.App.1993). Using contempt power to enforce a future obligation exceeds the trial court's authority. *Id.*

The trial court improvidently granted the May 1994 injunction as a part of the contempt proceedings. The May 1994 order is accordingly reversed.

### III. Appeal From Award of Attorney Fees

The DNR and Director Shorr contest the award of attorney fees for the contempt proceedings (WD 50601). The December 1994 order directed the DNR and Director Shorr to pay the Associations' attorney fees totaling $12,088.

In contempt proceedings, the trial court has discretion to assess reasonable attorney fees against the contemnor as a part of court costs. *See Superior Gearbox Co. v. Edwards*, 855 S.W.2d 486, 488 (Mo.App. 1993). Conversely, the trial court has no inherent power to compel the state to pay attorney fees as court costs. *In Interest of K.P.B.*, 642 S.W.2d 643, 645 (Mo. banc 1982). Costs cannot be assessed against state agencies or state officials absent express statutory authority. *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 882 (Mo. banc 1993).

Here, the award of attorney fees fails for two reasons. First, the trial court abused its discretion in awarding attorney fees for the contempt proceeding that resulted in an advisory order and in improper issuance of a second, expanded injunction. Second, no specific statute authorizes assessment of attorney fees against the state under the circumstances presented.

The December 1994 order, like the May 1994 order, is reversed.

All concur.