**C.L. SMITH INDUSTRIAL COMPANY, INC., Respondent,**

v.

**Brian MATECKI, Appellant.**

No. 69306.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 13, 1996.

Robert B. Hoemeke, Curtis C. Calloway, Thomas P. Berra, Jr., Lewis, Rice & Fingersh, St. Louis, for appellant.

William M. Corrigan, Jr., Timothy W. Van Ronzelen, Armstrong, Teasdale, Schlafly & Davis, St. Louis, for respondent.

AHRENS, Presiding Judge.

Brian Matecki appeals from a judgment of civil contempt and injunctive relief entered by the Circuit Court of St. Louis County on September 25, 1995 in favor of his former employer, C.L. Smith Industrial Company (Smith). The trial court found Matecki guilty of contempt for violating a non-compete injunction (January 3 injunction) contained in a January 3, 1995 consent judgment. The court enjoined (September 25 injunction) Matecki from competing with Smith for an additional period of time and awarded Smith attorneys' fees on the motion for contempt. We reverse in part and dismiss in part.

Matecki began working for Smith on January 9, 1984. By the terms of his employment agreement, Matecki was prohibited from using or disclosing Smith's secrets or confidential information. The agreement also contained a covenant by Matecki not to compete with Smith for a period of one (1) year following termination of his employment. Matecki's employment was terminated on September 23, 1994.

On December 15, 1994, Smith obtained a temporary restraining order enjoining alleged violations of the non-compete clause contained within the employment agreement. The violations centered around Matecki's relationship with Midland Industrial Corporation (Midland), a corporation formed by Matecki and two other former Smith employees, Mark Litzinger and Robert Sturm. The court entered a consent judgment on January 3, 1995 enjoining Matecki from competing with Smith prior to September 24, 1995, an injunction limited in duration to approximately eight months and three weeks. More specifically, the judgment prohibited Matecki from disclosure of confidential information, direct or indirect solicitation of business of Smith, and employment by or consultation with certain listed companies. The judgment also required Matecki to resign as president and director of Midland and sell his shares of stock in Midland within 48 hours.

Matecki attempted to comply with the consent judgment by entering into an agreement with Midland, Litzinger, and Sturm on January 4, 1995 (January 4 agreement). In the agreement, Matecki promised to sell his 100 shares of stock in the company to Litzinger for $500. Matecki was given an exclusive option to repurchase 90 of these shares for $450 on or after September 24, 1995, the day after the January 3 injunction expired. The agreement also provided for adjustments which might be necessary to insure that upon exercise of the option, Matecki would receive 45% of the shares of stock. Finally, Matecki resigned his positions as President and Director of Midland.

On September 1, 1995, Smith filed a motion designated "motion for contempt and order to show cause and motion for preliminary and permanent injunction." In the mo-

tion, Smith alleged that Matecki failed to comply with the January 3 injunction because Matecki retained a significant financial interest in Midland via the exclusive stock option. However, Smith did not allege a second, independent basis for injunctive relief. Smith prayed for: (1) a preliminary and permanent injunction against Matecki from competing with Smith for eight months and three weeks, a time period equal in duration to the January 3 injunction; (2) an order to show cause why Matecki should not be held in contempt; (3) a per diem fine; and (4) attorneys' fees and costs.

The trial court entered a show cause order setting a hearing for September 13, 1995. The order also set plaintiff's motion for preliminary and permanent injunction for hearing on the same date. Matecki objected to these orders in a timely manner. Two days prior to the hearing, Matecki entered into a written agreement with Midland, Litzinger, and Sturm rescinding the option to repurchase contained within the January 4 agreement.

After the conclusion of the contempt hearing the trial court, on September 25, 1995, found Matecki guilty of contempt of court for his deliberate refusal to comply with the January 3 injunction. The trial court granted a new injunction, the September 25 injunction, which extended the non-compete period to June 1, 1996 and awarded Smith attorney's fees in the sum of $8,785.50. The judgment provided:

> This new injunctive relief is ordered not for the purpose of punishing Matecki for his violation of the court's judgment, but rather for the purpose of equitably restoring to C.L. Smith the rights to which it was entitled by virtue of Matecki's Employment Agreement.

Matecki timely filed this appeal.

█ In his first point, Matecki asserts that the trial court erred as a matter of law by ordering the September 25 injunction because the court lacked authority to enter a new injunction in a civil contempt proceeding and lacked jurisdiction to modify or extend the January 3 injunction after final judgment had been entered. Smith claims that the court properly granted a new injunction which restored Smith to the position it would have been in had Matecki performed under his employment agreement. Alternatively, Smith argues that the court had authority to modify a prior, permanent injunction which was based on a condition subject to change in order to avoid unjust results.

█ The parties agree that in a proceeding for civil contempt, Missouri courts recognize two remedies for violation of an injunction. A court may commit the violator to imprisonment until the violator complies with the court's order or it may levy a compensatory fine against the violator, payable to the complainant. *R.E. Harrington, Inc. v. Frick*, 446 S.W.2d 845, 848 (Mo.App.1969). An enlargement or extension of a permanent injunction, however, may not be made in a civil contempt proceeding. *Id.*, at 848. Smith asserts that this rule is not applicable. It contends that it prayed for injunctive relief separate and apart from its request for contempt and that the additional injunctive relief was not punishment for violating the consent judgment. We disagree.

█ Procedures for contempt and for injunction are distinctly different and involve different requirements for pleading, notice, and proof. *Missouri Hosp. Ass'n v. Air Conservation Com'n of State of Mo.*, 900 S.W.2d 263, 267 (Mo.App.1995). In *Missouri Hosp.*, the petitioner filed a motion for contempt, but did not file a separate count for injunctive relief. Instead, it prayed for a permanent injunction as relief ancillary to the contempt holding. *Id.* The appellate court held the injunction was improvidently granted as a part of the contempt proceedings. *Id.* Here, Smith did not file a separate count or action for injunctive relief. Smith merely attempted to incorporate a motion for injunction into its motion for contempt by referring to both motions in the designation and the prayer for relief. While allegations were made which might permit a

finding of contempt of court, no allegations were made regarding an independent basis which would warrant granting injunctive relief. *See* §§ 526.030–.050; Rules 55.05 & 55.26. We find such incorporation insufficient to constitute two separate and unique counts or actions. We hold that, like the *Missouri Hosp.* motion, the instant motion for contempt prayed for a permanent injunction as relief ancillary to the contempt holding. When the trial court granted a new injunction pursuant to a finding of contempt, it exceeded its authority. *See Missouri Hosp.*, 900 S.W.2d at 267.

■ We next turn to Matecki's claim that the court had no jurisdiction to modify the January 3 injunction. Generally, the trial court's power to modify a judgment ceases when the judgment becomes final. Rule 75.01; *Missouri Hosp.*, 900 S.W.2d at 267. Here, the consent judgment became final on February 2, 1995, thirty days after entry and seven months prior to the filing of Smith's motion for contempt. However, there is an exception to the general final judgment rule. Pursuant to the exception, a court has the authority to modify a permanent injunction which is based on a condition subject to change. *See Twedell v. Town of Normandy*, 581 S.W.2d 438, 440 (Mo.App.1979); *Lee v. Rolla Speedway, Inc.*, 668 S.W.2d 200 (Mo. App.1984). Under that exception, courts "retain jurisdiction to vacate or modify the terms of the injunction in order to avoid unjust or absurd results when a change occurs in the factual setting or the law which gave rise to its existence." *Twedell*, 581 S.W.2d at 440. Smith contends that a recent decision of this court, *Watlow Electric Mfg. Co. v. Wrob*, 899 S.W.2d 585, 587 (Mo.App. 1995), which recognizes that exception, is directly on point. We disagree.

*Twedell, Lee,* and *Watlow* are distinguishable, in that each involved a claim of a change in the factual setting or the law which gave rise to the existence of the injunction. *Twedell* involved a motion to modify an injunction against a city from exercising municipal control over private land. The court awarded the original injunction pursuant to a statute which prohibited nonconsensual extension of municipal control over private land "used for farming, gardening, horticultural or dairy purposes." *Twedell*, 581 S.W.2d at 440 (citing § 80.030, RSMo 1949.) Twenty-four (24) years later, the trial court had jurisdiction to modify the original injunction upon a showing that the "land in question is no longer used for farming, gardening and horticultural purposes." *Id. Lee* involved a motion to modify an injunction against auto racing on the grounds of a regional fair. The trial court had jurisdiction to rule upon the motion to modify the injunction upon finding that "changes and improvements" would "substantially remove the dangers of further nuisance" and thereby alleviate the concerns which prompted the original injunction. *Lee*, 668 S.W.2d at 202, 204–05. In *Watlow*, former employees moved to modify a non-compete injunction. They contended the "prohibition against competition in products in which [employer] no longer competes serves no legitimate business purpose of [employer]. . . ." *Watlow*, 899 S.W.2d at 587. The court noted "the power to modify an injunction under these circumstances." *Id.*

In contrast to *Twedell, Lee* and *Watlow*, this case does not involve a claim of any change in the factual setting or the law which gave rise to the injunction. Instead, it involves a claim that Matecki's violative behavior has continued unabated and, therefore, the original injunction should be extended to restore Smith to the position it would have been in had Matecki ceased competing.

Smith cites a recent decision of the Western District, *Furniture Mfg. Corp. v. Joseph*, 900 S.W.2d 642 (Mo.App.1995) for the proposition that where injunctive relief involving a covenant not to compete is appropriate, enforcement of the "applicable period from the date of the decree would not be inequitable." *Id.* at 649. *Furniture Mfg.* is distinguishable in that the appeal stemmed from a distinct and original motion for injunctive relief based on a covenant not to compete, not from a motion for contempt nor a motion to modify a pre-existing injunction. Furthermore, the

court did not extend the duration of an injunction which enforced an expired non-compete clause. The court merely permitted the use of such an injunction by holding that the period of enforcement of a "restrictive covenant should be tolled pending litigation." *Id.*, at 649. Such a holding is barely relevant here because only two weeks of enforcement of the non-compete covenant existed when Smith filed the instant motion. Smith has not sought an extension on the non-compete clause of two weeks, but an extension on the January 3 injunction of eight months and three weeks. *Furniture Mfg.* is inapplicable here. Point granted.

■ Matecki's remaining points on appeal contend the trial court's holding of contempt was erroneous. Matecki claims: (1) he complied in good faith with the consent judgment, (2) the finding of contempt was against the weight of the evidence, and (3) he purged any alleged civil contempt by relinquishing the option prior to the show cause hearing. Smith challenges the jurisdiction of this court to address these issues on the basis that the contempt order was not a final judgment.

■ Having decided that Smith brought only one motion, a motion for contempt, and that the trial court erroneously granted an injunction as remedy for this motion, we are now left to review a contempt holding in which the trial court has not specified any coercive measures to compel compliance. Not only must the trial court specify coercive measures, but these measures must actually be enforced before a civil contempt order becomes an appealable final judgment. *City of Florissant v. Lee*, 714 S.W.2d 871, 873 (Mo.App.1986); *City of Pagedale v. Taylor*, 790 S.W.2d 516, 518 (Mo.App.1990).

■ Here, there is nothing in the record to indicate the contempt order was enforced. The court stated that Matecki had "attempted" to purge himself of contempt. No fine or imprisonment was either enforced or ordered by the court. While there was an award of attorney's fees to Smith, such an award is to compensate the aggrieved party

for losses or damages sustained by reason of the contemnor's noncompliance. *City of Pagedale*, 790 S.W.2d at 518. It is not a portion of the civil contempt order itself whose purpose is solely to coerce compliance. *Id.* An execution on the attorney's fees by themselves is insufficient to make the civil contempt order final. *Id.* Since no fine or imprisonment was enforced, the contempt holding is not final for purposes of appeal. Matecki's appeal from these portions of the judgment must be dismissed.

The portion of the judgment of the trial court ordering a new injunction is reversed. The appeal as to the remaining portions of the judgment is dismissed for lack of appellate jurisdiction.

PUDLOWSKI and SIMON, JJ., concur.