

# Missouri Court of Appeals

### Southern District

### Division Two

CHESTER WAYNE SMOTHERMAN )
and JEWELL SMOTHERMAN, )
        )
      Plaintiffs/Appellants, )
        )
      vs. )    No. SD35879
        )    Filed: May 1, 2019
TOMMY WHITE )
and JEANIE WHITE, )
        )
      Defendants/Respondents. )

APPEAL FROM THE CIRCUIT COURT OF HOWELL COUNTY

Honorable David P. Evans, Circuit Judge

## REVERSED AND REMANDED

Chester Wayne Smotherman and Jewell Smotherman ("the Smothermans") appeal the trial court's May 10, 2017 "Docket Entry and Order" and December 7, 2017 "Judgment of Contempt."[1]  In one point, the Smothermans assert the trial court committed reversible error by finding the Smothermans in civil contempt because the underlying judgment did not order or require them to remove the then existing fencing affixed to the disputed real estate.  Finding

---

[1] In **Smotherman v. White**, 556 S.W.3d 655 (Mo.App. S.D. 2018), this Court dismissed the Smothermans' appeal because "nothing in the record indicates that the Whites have executed on the fine levied against the Smothermans[,]" and "an unexecuted judgment is premature."  **Id.** at 658.  No such issue is present here, and we therefore proceed to the merits of the Smothermans' appeal.

merit to the Smothermans' point, we reverse the trial court's order and judgment, and remand for further proceedings consistent with this opinion.

**Factual and Procedural History**

The Smothermans filed an adverse possession lawsuit in 2013 in Shannon County against Tommy White and Jeanie White ("the Whites").[2] The Whites filed an answer, and also a cross-claim for adverse possession. After a 2016 bench trial, the trial court found that the Whites had proven their claim for adverse possession. In its November 29, 2016 Amended Judgment, the trial court awarded the Whites "in fee simple absolute" a tract of land consisting of 0.99 acres, and divested the Smothermans of any interest therein. As relevant to this appeal, the judgment indicated that the Smothermans were "ejected from the described real estate and shall ***remove themselves*** and ***all personal property*** placed upon the described real estate by them or their agents within ten (10) days." (Emphasis added).

On May 10, 2017, the trial court entered a "Docket Entry and Order" of civil contempt against the Smothermans for failing to ***remove fencing*** on the real estate. On December 7, 2017, the trial court entered a Judgment of Contempt against the Smothermans for failing to remove the fencing.

In a single point relied on, the Smothermans argue that the trial court committed reversible error in finding them in civil contempt on May 10, 2017 and December 7, 2017, for failing to remove old fencing from the Whites' property.

---

[2] Venue was later transferred to Howell County.

## Standard of Review

"In civil contempt cases, the ruling of the trial court will not be disturbed upon review by this Court absent a clear abuse of discretion." ***Stuart v. Ford***, 292 S.W.3d 508, 513 (Mo.App. S.D. 2009).

## Analysis

The Smothermans argue that "the trial court erred in finding [them] in civil contempt, for failing to remove old fencing from the [Whites'] property[.]" In support, the Smothermans argue that "there was no substantial evidence to support" those decisions in that "the underlying judgment did not order or require [them] to remove the then existing fencing that was affixed to the disputed real estate."

"The purpose of civil contempt is to benefit a party for whom an order, judgment, or decree was entered by coercing compliance with the relief granted." ***Landewee v. Landewee***, 515 S.W.3d 691, 695 (Mo. banc 2017) (internal quotation and citation omitted). While a trial court has the inherent and statutory authority to effectuate its judgments[3] (as applicable here), civil contempt[4] authority is narrowly confined.

> To support a charge of contempt for disobedience of a judgment, decree or order, the court's pronouncement may not be expanded by implication in the contempt proceeding and must be so definite and specific as to leave no reasonable basis for doubt of its meaning.

---

[3] *See **State ex rel. Cullen v. Harrell***, 567 S.W.3d 633, 640 (Mo. banc 2019).

[4] *See* 17 Missouri Practice, *Appeals in Civil Contempt Proceedings*, § 81.01:16 n.1 (2018 ed.):

> Generally, the distinction between civil and criminal contempt focuses on the purpose of the proceeding, whose interests are being served, and the nature of the penalty. For civil contempt, the penalty is remedial and is for the benefit of the complainant. Thus, a judgment for civil contempt may be remedied by performance of the underlying act that has been judicially mandated. For criminal contempt, the penalty is designed to be punitive and to vindicate the authority of the court and the judicial system.

***Carter County R-1 School Dist. v. Palmer***, 627 S.W.2d 664, 665 (Mo.App. S.D. 1982). Win or lose, every party in a case has the inherent right to rely on the four corners of a judgment for civil contempt purposes.[5]

Here, the relevant portion of the November 29, 2016 judgment stated as follows: "It is . . . the order of the court that [the Smothermans] hereby be ejected from the described real estate and shall ***remove themselves*** and ***all personal property*** placed upon the described real estate by them or their agents within ten (10) days." (Emphasis added).

On May 10, 2017, the trial court entered a document styled "Docket Entry and Order," which read in part:

> In violation of this court's orders and judgment, the court finds Chester Smotherman built a fence (after judgment) inside the western boundary of the property awarded to the Whites in the court's judgment. After the Whites filed their Motion for Contempt, the new fence was eventually removed prior to contempt hearing. The court further finds the northern boundary line was established by final judgment along the old fence line, and ***the Smothermans were ordered to remove the fence they had built within that line within 10 days***.

> The Smothermans have further failed and have refused to remove the fence they (the Smothermans) built on the Whites' property along the north side of the Whites' property. The court finds the Smothermans in contempt of court in building the new fence within the Whites' western boundary line, and ***in failing to remove the fence the Smothermans built within the northern boundary line***.

> Within 10 days of May 10, 2017, the Smothermans are ordered to remove the fence, all fence posts and markers, and gates that the Smothermans built and placed within the Whites' northern boundary line set by this court. If not removed within 10 days, the court will impose an additional fine of $250 per day for each additional day said fence has not been completely removed. In addition, the Smothermans are ordered to pay all service and filing fees incurred by the Whites

---

[5] *See **Smith v. Capital Region Medical Center***, 564 S.W.3d 800, 805 (Mo.App. W.D. 2018) (Prerequisite to an authorized order or judgment of contempt, among other requirements, the original judgment must "***specifically require[] some affirmative action*** other than the payment of money[,]" which requirement has been unsatisfied by the party to be held in contempt) (emphasis augmented) (internal quotation and citation omitted); ***Basham v. Williams***, 239 S.W.3d 717, 726 (Mo.App. S.D. 2007) ("A prima facie case for contempt" requires the requesting party to show "the contemnor's obligation to perform ***an obligation as required by a decree*** . . . .") (emphasis added); ***Missouri Hosp. Ass'n v. Air Conservation Comm'n of State of Mo.***, 900 S.W.2d 263, 267 (Mo.App. W.D. 1995) ("The trial court may exercise its [civil] contempt power only to compel compliance with ***obligations arising from a pre-existing judgment or decree***.") (emphasis added).

4

in filing their Motion for Contempt, along with $1,000 in attorneys fees incurred to this date as a result of acts of contempt by the Smothermans.

(Emphasis added).

On December 7, 2017, the trial court entered its "Judgment of Contempt," the relevant portions of which is recited as follows:

> Now, to compel compliance with this court's previous orders, judgment is hereby entered against [the Smothermans] for indirect civil contempt in this boundary-line dispute case. After written notice and show cause order was served on contemnors [the Smothermans], and after a full hearing on the matter was held on May 10, 2017, this court entered an interlocutory order of contempt finding the Smothermans in violation of the earlier 2016 judgment.
>
> . . . .
>
> After additional hearing held on August 7, 2017, the court finds by admission of the Smothermans that within the 10-day grace period ordered by the court, that [the Smothermans] failed and refused to remove the fence, all fence posts and markers, and gates that they built and placed within the Whites' northern boundary line. Chester Smotherman further acknowledged that although he had the ability to remove the fence, he continuously has chosen not to do so, and further has no intention of complying with this court's orders. In addition, the Smothermans have not complied with this court's orders by failing to pay any per diem fine and attorney fees.
>
> . . . .
>
> The $250 daily fine will continue to accrue as long as the Smothermans fail and refuse to comply with this court's orders to remove all fencing, posts, markers, and gates placed within the Whites' northern property line.

While it is apparent that certain portions of the trial court's attempts at enforcement via contempt order and judgment were authorized, others were not. Specifically, the trial court lacked the authority to hold the Smothermans in contempt for failure to remove fencing from the contested property (as extant of the time of the November 29, 2016 judgment).

The November 29, 2016 judgment ejected the Smothermans, and directed them to remove themselves and their personal property. Certainly, the trial court knew what it

5

intended—however, contempt (in this context) relates to a contemnor's failure to perform an affirmative action *required by the judgment*.[6] Whether the trial court found the fencing at issue to be "personal property" or "fixture" is not readily discernable from the November 29, 2016 judgment. As this court has indicated:

> The test for determining whether property has become a fixture is three-fold, consisting of: 1) the annexation to the realty; 2) the adaptation to the use to which the realty is devoted; and 3) the intent that the object become a permanent accession to the land. *These elements or tests all present questions of fact and are not ordinarily resolvable by law*. Whether or not an article is a fixture depends upon the facts and circumstances of a particular case.

*Freeman v. Barrs*, 237 S.W.3d 285, 288-89 (Mo.App. S.D. 2007) (internal quotations and citations omitted) (emphasis added). The Smothermans were not obliged to read the mind of the trial court—it is an arguable question of fact and law whether the fencing at issue was a fixture or not, pursuant to the November 29, 2016 judgment, and therefore whether the removal of such fencing was required. Civil contempt does not reside within these metes and bounds.[7] The Smothermans' point is granted.

The trial court's May 10, 2017 Docket Entry and Order and December 7, 2017 Judgment of Contempt are reversed and remanded for further proceedings consistent with this opinion.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - CONCURS

DANIEL E. SCOTT, J. - CONCURS

---

[6] *See* note 5 of this opinion.

[7] The record reflects that this was a highly contentious case, both before and after the November 29, 2016 judgment. This is certainly not the first time a fence dispute has yielded an acrimonious record. *See e.g.*, *Climer v. Wallace*, 28 Mo. 556, 559 (Mo. 1859) ("This seems to be a hard action, judging from what appears on the record, but the law must have its way. Our courts hold that a worm fence is part of the freehold and passes along with the land on which it is built."). To be clear, we do not condemn the trial court for judicious use of its contempt powers in such a situation—rather, the reversible issue relates specifically to the explicit and natural limits of the obligations imposed on the Smothermans by the terms of the November 29, 2016 judgment.