

# In the Missouri Court of Appeals
## Eastern District
### DIVISION THREE

| | | |
|---|---|---|
| AUBREY RUTHERFORD and MARY RUTHERFORD, Husband and Wife, | ) ) ) | No. ED101476 |
| | ) | Appeal from the Circuit Court |
| Respondents/Cross-Appellants, | ) | of Cape Girardeau County |
| | ) | |
| vs. | ) | Hon. William L. Syler |
| | ) | |
| JACK DAVIS and SHIRLEY DAVIS, Husband and Wife, | ) ) | |
| | ) | Filed: |
| Appellants. | ) | March 17, 2015 |

This appeal arises from a property dispute between Jack and Shirley Davis and Aubrey and Mary Rutherford. The Davises appeal the judgment entered after a bench trial finding that they had not acquired a prescriptive easement over a portion of the Rutherfords' land. The Rutherfords cross-appeal the denial of their request for attorney fees. We affirm the judgment finding no prescriptive easement and dismiss the cross-appeal regarding attorney fees.

The Rutherfords' property has been subject to a recorded easement since 1977 when they entered a contract granting the adjacent property owners permission to use a sixteen-foot wide road as a means of ingress and egress across the Rutherfords' property. The road turns at a point just in front of the Rutherfords' home. The Davises began repeatedly driving their vehicles outside the bounds of the recorded easement road at that curve. Over the years, the Rutherfords erected a number of obstacles to prevent the Davises from encroaching onto their property, all of which were removed by the Davises.

The Rutherfords filed a petition in 2013, claiming that the Davises had trespassed on their property by driving outside the limits of the recorded easement road and by removing items from the Rutherfords' property. They sought an injunction, damages, costs and attorney fees under the contract. In response, the Davises asserted that they, and the previous owners of their property, had been using the area around the curve in the road for more than ten years, openly, notoriously and hostile to the Rutherfords' ownership of that property. They alleged that the easement cannot be used to transport farm equipment without widening the road at that turn.

At the bench trial, the Rutherfords presented their own testimony and the testimony of two land surveyors. Jack Davis and another neighbor, who also uses the easement road for property access, testified for the defense. In its judgment, the trial court expressly found the witnesses presented by the Rutherfords were "credible" and the testimony of Jack Davis was "incredible."

The trial court found that the Davises did not have justification for removing the obstacles from the Rutherfords' property. The court stated that it was making "no finding as to lawful or unlawful deviation" from the recorded easement and found that the recorded easement was "adequate" to give the Davises access to their property. It further found that the Davises failed to make a case for prescriptive easement and that there was no evidence to establish adverse possession of the disputed area. The court found that the Davises failed "to present credible proof of continuous use that was uninterrupted" and failed "to establish precisely where they were claiming by a prescriptive easement," so that the Rutherfords were on notice. The court held that the recorded easement is the only easement available to the Davises and directed them to stay within that easement. It further ordered that the Rutherfords were not allowed to

erect a fence on the property around the easement that was taller than four feet high. It denied the Rutherfords' request for attorney fees, but assessed costs against the Davises.

We will affirm the judgment in a court-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We accept as true all evidence and reasonable inferences favorable to the prevailing party and disregard contrary evidence and inferences. Federal National Mortgage Association v. Wilson, 409 S.W.3d 490, 494 (Mo.App. E.D. 2013). We also defer to the trial court's resolution of conflicting evidence and its credibility determinations. Id. We may affirm the judgment in a court-tried case if it is sustainable on any ground. Covert v. Fisher, 151 S.W.3d 70, 73 (Mo. App. E.D. 2004). "If the result is correct, we do not need to agree with the trial court's reasoning in order to affirm, and we will affirm even if the trial court gives a wrong or insufficient reason." Id. at 74.

To succeed on their claim for a prescriptive easement, the Davises must prove that their use was continuous, uninterrupted, visible and adverse for a period of ten years. Hirsch v. Ebinger, 334 S.W.3d 695, 698-99 (Mo. App. E.D. 2011). Missouri law disfavors the creation of prescriptive easements, and therefore each of these elements must be proven by clear and convincing evidence. Id.

Here, the evidence found credible by the trial court was not sufficiently clear or convincing to establish a ten-year period of continuous and uninterrupted use. The Davises insist that there is evidence their use began as soon as they took ownership in 1999. They point to Jack Davis's testimony, but we must disregard that evidence because the trial court found it incredible. They also point to the other neighbor's testimony, who testified that he lived there since 1995, "tried" to stay on the road and that his *current* tenants sometimes also use the

3

disputed area outside the road. The Davises would have us construe this as evidence that the disputed area has been used since 1995. Drawing such an inference from that testimony would not only be unreasonable, but also falls short of the clear and convincing standard of proof. Moreover, it would be contrary to the trial court's judgment and therefore impermissible under our standard of review.

Rather, the only evidence found credible by the trial court as to the duration of the use is Aubrey Rutherford's testimony. He testified that the Davises' predecessors never sought to widen the easement, nor did he observe any user having trouble staying within the boundaries of the recorded easement road at the curve. When the Davises moved onto the property in 1999, they began using the road. But, Rutherford testified, it was not until 2003 or 2004, when the Davises moved their truck business onto the property, that Rutherford noticed them "cutting the corner." Rutherford told them they were on his property and tried to explain that the recorded easement ended eight feet on either side from the road's center line. Rutherford testified that the Davises continued with this encroachment, and eventually, Rutherford placed rocks at the curve to deter them. Rutherford said the Davises moved the rocks and continued to drive outside the easement boundaries at the curve. Rutherford put telephone poles down in 2008 or 2009, which the Davises moved and the Rutherfords replaced. In 2011, Rutherford cut the poles in half and posted about 12 of them upright along the edge of the road on his property. The Davises removed those too, which gave rise to an incident involving threats of violence between the parties. The Davises continued "cutting the corner" until 2013, when Rutherford put up a split-rail fence. This time, it was "quite a while" before the Davises came and pulled the fence out of the ground.

4

Testimony that the Davises began using the area outside the recorded easement in "2003 or 2004" is too broad of a date range to constitute clear and convincing evidence as to when the use began, much less that it had been going on for ten years by the time the Davises first asserted their claim for a prescriptive easement in May of 2013 (the lawsuit was filed by the Rutherfords in April of 2013, and the Davises answered asserting this prescriptive easement in May of 2013).[1]

Moreover, as the trial court expressly concluded, there also was not clear and convincing evidence that the use was uninterrupted. When considering whether a use was uninterrupted, we "look only at the actions of the party against whom the prescriptive right is claimed." Smith v. Chamblin Properties, LLC, 201 S.W.3d 582, 587 (Mo. App. W.D. 2006). Thus, the question is whether the Rutherfords interrupted the adverse use during the ten-year time period to destroy the prescriptive easement. Id. While they repeatedly attempted to block the Davises' ability to drive outside the boundaries of the recorded easement, most of those efforts were quickly thwarted by the Davises. Immediate removal of an obstacle defeats the interruption. See Trustees of Forestgreen Estates v. Minton, 510 S.W.2d 800, 803 (Mo. App. 1974) (addressing whether servient estate owner's putting up barricades constituted interruption of use). But when the split rail fence went up, Aubrey Rutherford stated it was "quite a while" before Jack Davis came and removed it. Thus, the Davises failed to prove that their use of the disputed area was uninterrupted by the actions of the Rutherfords for the entire ten-year prescription period.

Because we find that the Davises failed to establish this element of their claim, we need not address the other challenges to the trial court's judgment raised in the Davises' appeal—

---

[1] The Davises suggest the date of trial in March of 2014 is the relevant date for purposes of the ten-year prescription period. Even if that unsupported proposition were true, again the evidence did not clearly and convincingly establish that the use began before March 2004, as the broad vague date range testified to by Aubrey Rutherford included all of 2004.

namely, the finding that the recorded easement was "adequate" and the finding that the precise area in dispute was not defined enough to put the Rutherfords on notice of the claim.

Points I, II and III of the Davises' appeal are denied.

The Rutherfords claim in their cross-appeal that the trial court erred in failing to award attorney fees. The Davises point out the untimeliness of the notice of cross-appeal, to which the Rutherfords offer no response.

Both parties' original notices of appeal were deemed untimely, and they were both ordered by this Court to show cause why their appeals should not be dismissed. The Davises sought leave to file a notice of appeal out of time, but the Rutherfords did not seek leave or otherwise respond to this Court's show cause order. We then issued an order granting the Davises leave to file a new notice of appeal and pointing out in detail an alternative means for establishing a timely appeal; namely, the parties could address a clerical error in the circuit court that might establish the timeliness of both parties' original notices. Therein, we directed that "[i]f the parties desire to pursue this course of action, they should file a supplemental legal file with a copy of the trial court's order." It appears no one pursued this course of action as no such supplemental legal file was filed, nor does the circuit court's electronic docket sheet indicate any attempts to correct the clerical error as this Court suggested. Instead, both parties simply filed new notices of appeal.

The Davises' new notice of appeal was authorized because this Court granted their motion for leave, but the Rutherfords' new notice was not. They had not sought leave to file a new notice of appeal. See Rule 81.07 ("party may seek special order . . . permitting a late filing of the notice of appeal" within six months of final judgment). The grant of leave to file a late notice of appeal to one party does not apply to another party's notice of appeal. See In re

6

Marriage of Wilfong, 658 S.W.2d 45, 46 (Mo. App. W.D. 1983) (cross-appellant has "independent status" and order allowing late filing of cross-appeal did not apply to appellant's notice, which was dismissed as untimely). Nor can their new notice be deemed timely under Rule 81.04(c). That rule permits a party to file a notice of appeal within ten days after the "first" "timely notice of appeal" by another party. Rule 81.04(c). That rule does not, by its terms, apply to subsequent notices of appeal. The timely filing of a notice of appeal is an "indispensable prerequisite to appellate jurisdiction and a vital step for perfecting an appeal." State ex rel. Blackwell v. Elrod, 604 S.W.2d 768, 769 (Mo. App. E.D. 1980). Because the Rutherfords' notice of appeal was untimely and they took none of the steps available to them to correct the untimeliness—including failing to respond to this issue in their brief—we must dismiss their appeal. See Rogiers v. Boatmen's Trust Company, 918 S.W.2d 285, 287 (Mo. App. E.D. 1996) (dismissing cross-appeal filed within ten days of appellants' untimely notice of appeal, where cross-appellant did not seek leave under Rule 81.07).

The judgment is affirmed.

ROBERT G. DOWD, JR., Judge

Kurt S. Odenwald, P.J. and
Gary M. Gaertner, Jr., J., concur.

7