**Elmer M. OTEY, Respondent,**

v.

**Debra WILEY, Appellant.**

No. ED 103960

Missouri Court of Appeals,
Eastern District,
DIVISION TWO.

Filed: May 23, 2017

**516**

Bernard F. Edwards, Jr., 8431 Midland Blvd., St. Louis, MO 63114, For Respondent.

Larry S. Fields, Chloe R. Woods, 401 S. 18th Street, Suite 425, St. Louis, MO 63101, For Appellant.

SHERRI B. SULLIVAN, P.J.

### Introduction

Debra Wiley (Wiley) appeals from the trial court's judgment entered in favor of Elmer M. Otey (Otey) on his claim for rent and possession. We affirm as modified.

### Factual and Procedural Background

On November 17, 2015, Otey filed a Petition and Affidavit for rent and possession seeking $6,700 in damages for unpaid rent from Wiley from January 2015 through November 2015 in the circuit court of the City of St. Louis. On January 12, 2016, the court entered a default judgment against Wiley in the amount of $14,400 and granted possession of the premises to Otey.

On January 19, 2016, the court heard and granted Wiley's motion to set aside the default judgment. That day the parties entered into a consent judgment as to possession and the court conducted a bench trial on the issue of unpaid rent and damages. The following evidence was adduced at trial.

In December 2014, Wiley entered into a written agreement for the premises with Carletta Lloyd (Lloyd), Otey's ex-wife. The terms of the lease, signed by Lloyd and Wiley, provided the monthly rent of $1,500 be paid to Lloyd on the 1st of each month from December 2014 through December 2015. The lease states that a $30 late charge will be applied to late payments. At the time of the lease agreement, Lloyd and Otey jointly owned the property.[1] On January 5, 2015, the St.

---

1. The marriage of Lloyd and Otey was dissolved on July 9, 2009. In a consent judgment entered with the Judgment of Dissolution, Otey was given 60 days to provide proof of his ability to refinance the property and to pay Lloyd $10,000 in exchange for Lloyd executing the necessary documents allowing Otey to refinance the property. In the event Otey was unable to provide proof of his ability to refinance, Lloyd was given the sole authority to

Louis County Circuit Court entered a judgment, pursuant to a settlement agreement, quieting title to the property in favor of Otey.[2] Wiley testified she had been renting the property from Lloyd for over three years when Otey became the sole owner of the property in January 2015.

On January 6, 2015, Otey hand-delivered to Wiley a letter informing her that he was the new owner of the property. The letter advised Wiley she must sign a new rental agreement with him at the rate of $1,800 per month and if she did not sign the new lease, the rent would increase to the default rate of $2,200 per month. On January 9, 2015, Otey presented Wiley with said lease, which included a provision allowing him to charge a fee for late payments.

Wiley refused to sign the new lease, advising Otey she had an existing lease to pay $1,500 per month. Wiley stated Otey insisted he needed $1,800 a month and that she ultimately agreed to pay him $1,800 per month for 10 of the 12 months under the lease, for a total of $18,000, because the total amount of money paid would be equal to paying $1,500 per month for the 12 months under the terms of the existing lease.

Wiley testified she paid Otey $1,800 per month from January through October and nothing in November and December, thus satisfying the terms of the lease. Otey acknowledged Wiley paid him $1,800 per month from January through September but asserted Wiley's October payment was returned for insufficient funds and was never satisfied. Otey further testified Wiley was late in her payments on seven occasions. Wiley acknowledged she had to

stop payment on her initial October payment to Otey but insisted she later satisfied the payment.

On January 19, 2016, the court entered judgment against Wiley and in favor of Otey in the amount of $10,600. This appeal follows.

### Points on Appeal [3]

In her first point, Wiley argues the trial court misapplied the law in finding in favor of Otey because she had a valid, enforceable existing lease agreement and a new owner of land is bound by the existing terms of a rental agreement.

In her second point, Wiley argues the trial court abused its discretion in denying her motion to join Lloyd as an indispensable party or in the alternative, to call Lloyd as a witness.

### Standard of Review

 In a court-tried case, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Inv'rs All., LLC v. Bordeaux, 428 S.W.3d 693, 695 (Mo. App. E.D. 2014). All evidence and reasonable inferences favorable to the prevailing party are accepted as true and we disregard any contrary evidence and inferences. Rutherford v. Davis, 458 S.W.3d 456, 458 (Mo. App. E.D. 2015). We defer to the trial court's credibility determinations and its resolution of conflicting evidence. Id. Issues of statutory construction, however, are reviewed de novo. Bordeaux, 428 S.W.3d at 695.

---

list the property for sale, was awarded exclusive possession of the property, and was ordered to pay the mortgage.

**2.** Title to the property was quieted in favor of Otey, and $10,000 previously deposited into

the court registry by Otey was ordered paid to Lloyd.

**3.** Otey did not file a respondent's brief.

### Discussion

■ At trial, Otey's claim was premised on the contention Wiley did not have a valid pre-existing lease because her lease with Lloyd "was null and void [since] ... [he] wasn't a party to it." Wiley's defense was that she fulfilled her rent obligation under her existing written lease agreement by paying Otey more than the contract rate from January through October.

■ Based on the evidence presented at trial, it appears the trial court awarded Otey damages as follows: (1) $3,600, representing $400 per month from January through September for the difference between the "default" rent of $2,200 and the $1,800 Wiley paid; (2) $6,600, representing $2,200 per month for unpaid rent for October, November, and December; and (3) $400 in late fees, representing $40 for each of the times Wiley's payments were either late or absent, for a total of $10,600. As such, the court must have found Wiley failed to make her October rent payment, and that Otey was not bound by the terms of the existing lease agreement and therefore Wiley was responsible for $2,200 in monthly rent and late fees.

"Generally, Chapter 535 provides landlords an efficient statutory remedy to collect past-due rents and regain possession of leased property through procedures established to achieve this purpose." Bordeaux, 428 S.W.3d at 696. Section 535.070,[4]

titled "Purchaser of leased lands may recover possession[,]" provides as follows:

> If any person purchases lands or tenements occupied at the time of such purchase by any tenant, lessee or sublessee, who shall, at any time thereafter, fail to pay rent to such purchaser, the person purchasing such property shall have the right, upon such failure, to commence proceedings before an associate circuit judge to recover rent and possession, *under the terms of the prior owner's lease*, for unpaid rent accruing after the transfer of title. The right to commence proceedings pursuant to this section shall exist regardless of whether the transfer was by private foreclosure, tax or judicial sale, or by any other means. The provisions of chapter 441 and this chapter shall apply.

(Emphasis added.)

■ In order to recover rents pursuant to Section 535.070, Section 535.081 requires the "successor in title" to provide adequate and timely notice of the property's transfer of ownership to the tenant. Section 535.081; Bordeaux, 428 S.W.3d at 697.[5]

Here, Otey was bound by the terms of the lease agreement already in place when he acquired title to the property. Although not a purchaser in the traditional sense, prior to January 2015, Lloyd was obligated to pay the mortgage on the property and

---

4. All statutory references are to RSMo 2000.

5. Although not raised as a point on appeal, we note Otey failed to comply with the requirements of Section 535.090, setting forth the elements of proof to be included in his verified complaint for rent and possession. Section 535.090 states:

> It shall be sufficient for such person purchasing lands or tenements to file a complaint, pursuant to section 535.070, verified by affidavit, *stating by whom the premises* were leased or rented, and the terms of such lease or renting, and how such person

> claims title to the lands or tenements; and upon the trial of the cause, if the plaintiff shows that the party in possession, or those under whom the party in possession claims, rented or leased from a party claiming title to the premises by deed, and that the plaintiff has acquired the title of the original lessor or landlord, by a deed or deeds, regularly acknowledged, the plaintiff shall be entitled to recover possession and unpaid rent accruing after the transfer and while the tenant was in possession.

was granted the right to exclusively possess the property. It was not until the final judgment in the quiet title action, and upon payment of $10,000 to Lloyd, that title was transferred and Otey became the sole owner of the property. At that point, Otey acquired the right to collect rent from Wiley, the lessee, under the terms of the existing lease.

The legal premise that a successor in interest is bound by the terms of an existing lease is not new. As stated in Starbuck v. Avery, 132 Mo.App. 542, 112 S.W. 33, 34 (Mo. App. 1908),

> If a landlord rents or leases his real estate to a tenant who goes into possession under the terms of the letting, and afterwards the landlord conveys the land, the grantee knowing of the tenancy and the possession of the tenant, and the latter, knowing of the sale, continues to occupy the premises under the tenancy, the relation of landlord and tenant is thereby continued between the grantee and the tenant; and, unless the facts of the case show that such tenant repudiated the tenancy under the grantee, his continued occupancy will raise the presumption that it is under the tenancy. The grantee's warranty deed received from his grantor operated as an assignment of whatever right the grantor had as landlord in the letting, and, if the tenant continues to occupy under the tenancy, the grantee may maintain his action for the rent under the original letting by the grantor.

See also Bess v. Griffin, 234 S.W.2d 978, 981 (Mo. App. 1950) (court found the claim of purchaser of land for "reasonable rent" from a tenant failed to state a cause of action because the purchaser of a leased premises "takes the same remedy that his vendor had" and she was not seeking recovery under the original lease but upon an entirely new contract).

The trial court erred in awarding Otey damages based on the "default" rent of $2,200 per month or for late fees, as set forth in the new lease he attempted to force upon Wiley. Otey was bound by terms of the existing lease between Lloyd and Wiley which established monthly rent at $1,500 and $30 for each late payment. The record and the trial court's findings indicate Wiley paid Otey $16,200 in rent, leaving an unpaid balance of $1,800, plus an additional $240 in fees for the eight payments that were late or unpaid.

Based on the foregoing, Appellant's Point I is granted and Point II is denied as moot.

### Conclusion

The judgment of the trial court in favor of Otey is affirmed as modified, to-wit: judgment is entered in favor of Otey and against Wiley in the amount of $2,040, plus court costs.

Roy L. Richter, J., and Colleen Dolan, J., concur.