Facts and Procedural Background
The 8182 Maryland Associates Limited Partnership was created in 1984. The purpose of the partnership was to acquire, construct, lease, and operate various structures, including an office building and parking garage in the downtown Clayton business district. The partnership agreement listed Apex as the general partner along with several limited partnerships, including PS Maryland Avenue Associates ("PSMI") and PS Maryland Avenue Associates II ("PSMII"). Some of the limited partners were partners in PSMI and PSMII.
The partnership agreement included a provision requiring Apex to distribute "available cash flow" at "reasonable intervals during the fiscal year." The partnership agreement also included a forced sale clause, which required Apex, as the general partner, to purchase the limited partners' interests if the limited partners collectively desired to liquidate the partnership and sell the project.
*392 In 1993, PSMI and PSMII were dissolved, and the partnership agreement was amended. Mr. Heifetz, Mr. Chervitz, and Mr. Stone were substituted in place of PSMI, and Mr. Heifetz, Mr. Chervitz, Ronald Lurie, Nancy Lurie, and the Stones were substituted in place of PSMII. In July 1993, the partnership agreement was further amended to include Mr. Gershman, Mr. Spewak, the Maylacks, and Jeffrey Michelman as substituted limited partners. The amendments to the partnership agreement provided the substituted limited partners would be "subject to and bound by all provisions of the Partnership Agreement as if he were originally a party to the Partnership Agreement."
In 2005, Mr. Heifetz, Mr. Gershman, Mr. Michelman, Mr. Spewak, and the Stones advised Apex of their intent to exercise the partnership agreement's forced-sale clause. When Apex declined, they filed suit, alleging Apex breached the partnership agreement and its fiduciary duty to them by not carrying out the forced-sale clause. The circuit court entered summary judgment in favor of Apex, and the court of appeals affirmed the judgment, finding not all of the limited partners to the partnership agreement expressed a desire to invoke the forced-sale clause. See Heifetz v. Novelly , 309 S.W.3d 333 (Mo. App. 2010).
In 2010, the limited partners again informed Apex of their desire to exercise the forced-sale clause. Apex declined, and the limited partners filed the current underlying lawsuit alleging Apex breached the partnership agreement when it refused to comply with the forced-sale clause and breached its fiduciary duties by failing to make the required cash flow distributions under the partnership agreement.[2]
In 2015, the case proceeded to trial. The jury found in favor of the limited partners and awarded them $2,804,689 on the breach of contract claim, nominal damages of $1,000 to each partner on the breach of fiduciary duty claim, and $2.8 million in punitive damages. The trial court entered its judgment consistent with the jury's verdict on June 26, 2015.
On July 24, 2015, the limited partners filed a motion for attorney fees. On July 27, 2015, Apex filed its timely motion for JNOV in which it challenged the submissibility of the limited partners' breach of fiduciary duty claim and whether the limited partners made a submissible case for punitive damages. On October 26, 2015, the trial court overruled Apex's motion for JNOV. On the same date, however, it sustained the limited partners' motion for attorney fees and entered an amended judgment including several additional paragraphs regarding awards of attorney fees.
On November 10, 2015, Apex filed a motion for JNOV with respect to the amended judgment, including a challenge to the award of attorney fees. Because the trial court did not rule on the JNOV motion within 90 days, it was deemed overruled February 8, 2016. Apex filed its notice of appeal February 17, 2016.[3] After an opinion by the court of appeals, the case was transferred to this Court. Mo. Const. art. V, sec. 10.
Timely Notice of Appeal
This Court must first address the limited partners' assertion this appeal *393 should be dismissed for lack of appellate jurisdiction because Apex failed to timely file its notice of appeal. Rule 81.04(a) requires the notice of appeal to be filed no later than 10 days "after the judgment, decree, or order appealed from becomes final." Rule 81.05(a)(2) provides:
If a party timely files an authorized after-trial motion, the judgment becomes final at the earlier of the following:
(A) Ninety days from the date the last timely motion was filed, on which date all motions not ruled shall be deemed overruled; or
(B) If all motions have been ruled, then the date of ruling of the last motion to be ruled or thirty days after entry of judgment, whichever is later.
Therefore, when a judgment becomes final for purposes of filing a notice of appeal depends, in part, on whether an authorized after-trial motion was filed. This Court has deemed a motion for judgment notwithstanding the verdict and a motion to amend the judgment authorized after-trial motions. See Taylor v. United Parcel Serv., Inc. , 854 S.W.2d 390, 392 n.1 (Mo. banc 1993).
The limited partners assert the judgment entered June 26, 2015, was the final judgment and, when Apex's motion for JNOV was overruled October 26, 2015, Apex had 10 days in which to file its notice of appeal. Because Apex did not file its notice of appeal within 10 days, the limited partners assert it was untimely. In doing so, the limited partners contend the amended judgment was not an actual amended judgment but simply a post-judgment order because a motion for attorney fees is not an authorized after-trial motion and, instead, is a matter incidental to the judgment. The limited partners' assertions, however, are contrary to the position they took at trial and this Court's rules.
First, Rule 75.01 provides: "The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time." The filing of a timely " 'authorized after-trial motion' extends a trial court's jurisdiction for up to ninety days after the filing of the motion." Massman Constr. Co. v. Mo. Highway & Transp. Comm'n , 914 S.W.2d 801, 802 (Mo. banc 1996) (citing Rule 81.05). "Once the thirty day period in Rule 75.01 expires, a trial court's authority to grant relief is constrained by and limited to the grounds raised in a timely filed, authorized after-trial motion." Id. at 802-03.
Here, within the 30-day period prescribed by Rule 75.01, Apex filed a motion for JNOV.[4] Because a motion for JNOV is an authorized after-trial motion, this extended the trial court's jurisdiction for up to 90 days to address the issues raised therein. But Apex's motion for JNOV was not the only authorized after-trial motion filed. Also within Rule 75.01's 30-day period, the limited partners filed a motion for attorney fees.
While the limited partners now claim their motion for attorney fees was not an authorized after-trial motion, they took a contrary position at trial.[5] In their *394 reply brief in support of an award of attorney fees, the limited partners asserted their motion for attorney fees was timely because it was filed "within the 30-day time limit set by Rule 78.04 for after-trial motions to amend the judgment." Rule 78.04 provides, in pertinent part, "any motion to amend the judgment or opinion shall be filed not later than thirty days after entry of the judgment." The limited partners, therefore, presented their motion to the trial court as a motion to amend the judgment to include an award of attorney fees.[6]
The limited partners rely on Burton v. Klaus , 455 S.W.3d 9, 12 (Mo. App. 2014), and Glandon v. Daimler Chrysler Corp. , 142 S.W.3d 174, 178 (Mo. App. 2004), for the proposition that a motion for attorney fees is not an authorized after-trial motion. But in neither Burton nor Glandon is there any indication that the parties presented the motion for attorney fees as a motion to amend the judgment. Burton and Glandon , therefore, are distinguishable from the present case, in which the limited partners expressly requested the circuit court amend the judgment to include attorney fees. The circuit court did just that when it amended its judgment October 26, 2015, to award the limited partners attorney fees. Therefore, under the facts and circumstances of this case, the limited partners' motion for attorney fees was an authorized after-trial motion to amend the judgment extending the trial court's jurisdiction beyond the 30-day period prescribed in Rule 75.01.[7]
The limited partners further contend the October 26, 2015 judgment was nothing more than a post-trial order. But the limited partners fail to cite any authority supporting their position and ignore this Court's rules regarding amended judgments. Rule 78.07(d) provides: "The trial court may amend or modify any judgment in accordance with Rule 75.01 or upon motion by any party. Unless an amended judgment shall otherwise specify, an amended judgment shall be deemed a new judgment for all purposes."
Here, the October 26, 2015 judgment was titled "Amended Judgment" and begins by expressly stating it is amending the June 26, 2015 judgment pursuant to the limited partners' request for attorney fees: "Pursuant to the Verdicts of the Jury herein, and [the limited partners]' Motion For An Award Of Attorneys Fees And Expenses, Judgment is hereby entered amending the Judgment entered on June 26, 2015." The judgment then incorporated the language from the June 26, 2015 judgment with three additional paragraphs pertaining to attorney fees. The trial court, therefore, amended the judgment on the limited partners' motion for attorney fees and did not otherwise specify the October 26, 2015 amended judgment was to be treated as anything other than a new judgment for all purposes.
As a new judgment, Apex had 30 days from the amended judgment's entry to file a motion for JNOV or new trial. See Rule *395 72.01(b). Apex timely filed its motion for JNOV November 10, 2015. Because the trial court did not rule on the November 10, 2015 motion within 90 days, it was deemed overruled February 8, 2016. See Rule 81.05(a)(2)(A). Apex, therefore, had 10 days from February 8, 2016, in which to file its notice of appeal. See Rule 81.04(a). Apex timely filed its notice of appeal February 17, 2016. Accordingly, Apex's appeal is properly before this Court.[8]
Apex's Claims Are Not Preserved
In its first point, Apex asserts the trial court erred in submitting the limited partners' breach of fiduciary duty claim to the jury and overruling its motion for JNOV because the limited partners failed to demonstrate the existence of any fiduciary duty separate and independent of its contractual obligations to make annual cash distributions under the partnership agreement. In its second point, Apex contends the trial court erred in overruling its motion for JNOV because the limited partners failed to prove the essential element of pecuniary damages stemming from a breach of fiduciary duty because they sought and received only an award of nominal damages. Finally, in its third point, Apex asserts the trial court erred in submitting the limited partners' claim for punitive damages to the jury and overruling its JNOV motion because punitive damages were not available in that the limited partners failed to establish a breach of fiduciary duty claim and could not recover punitive damages under their other claim for breach of contract.
But Apex failed to preserve these claims for appellate review. Rule 72.01(b) provides, in pertinent part: "Not later than thirty days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the motion for a directed verdict ." (Emphasis added.) Rule 72.01(b), therefore, requires a party to file a motion for directed verdict before it can move for JNOV.
This Court has held that, in a civil, jury-tried case, it is necessary, "to preserve the question of submissibility for appellate review, to file a motion for directed verdict at the close of all evidence and to assign the error of the court in having failed to have directed such a verdict in an after-trial motion" such as a motion for JNOV. Ukman v. Hoover Motor Express Co. , 269 S.W.2d 35, 36 (Mo. 1954) ; see also Howard v. City of Kansas City , 332 S.W.3d 772, 790 (Mo. banc 2011). "A motion for directed verdict at the close of all evidence becomes the meaningful motion to preserve the issue as it presented itself to the trial court at that time, prior to submission to the jury." Sanders v. Ahmed , 364 S.W.3d 195, 207 (Mo. banc 2012). Accordingly, to preserve a submissibility issue for appellate review, it must be included in both a motion for directed verdict at the close of all evidence and a motion for JNOV. Id.
Here, Apex filed a motion for directed verdict at the close of the limited partners' case-in-chief but failed to move for a directed verdict at the close of evidence. Nevertheless, Apex now asserts it effectively made an oral motion for directed verdict at the close of evidence. Such an assertion, however, is not supported by the record.
*396 First, nowhere in the transcript does Apex expressly request a directed verdict after the close of evidence. Instead, Apex relies on the following statements made during the instruction conference:
The only testimony in this case about distributions is about available cash flow. And the [limited partners have] not taken that out of the submission because they are worried about the ruling in the ... Peterson versus Continental Boiler case,[9] which said that a breach of fiduciary duty claim cannot arise out of a duty created in an agreement.
And that still is, based on the testimony. Their own witness on fiduciary duty testified that his opinion on breach of the fiduciary duty to make distribution was based on the definition in [the partnership agreement].... The only duty Apex Clayton had was to follow the wording of the partnership agreement on available cash flow. And accordingly, there is no basis to submit fiduciary duty.
But these statements were clearly made in the context of Apex objecting to the fiduciary duty instruction because, as Apex conveniently leaves out of its brief, it prefaced these statements at the instruction conference by stating: "Instruction Number 9, we object, first of all, in terms of the wording of it." Such statements challenged the submission of the fiduciary duty instruction to the jury, not the submissibility of the breach of fiduciary duty claim in the context of a directed verdict. Apex, therefore, failed to move for a directed verdict at the close of all evidence.
Apex further contends, even if this Court finds it failed to make an oral motion for directed verdict, the Court can still review its claim that the limited partners failed to make a submissible case for punitive damages because they requested only nominal damages, which are an insufficient basis for an award of punitive damages. In support of its assertion, Apex relies on Marquis Financial Services of Indiana Inc. v. Peet , 365 S.W.3d 256 (Mo. App. 2012). Marquis Financial , however, is distinguishable from the present case.
In Marquis Financial , the plaintiff sued the defendant for fraud and unjust enrichment. Id. at 258. The jury returned verdicts in favor of the plaintiff but awarded $0 in actual damages and $500,000 in punitive damages on the fraud claim. Id. In reversing the jury's award of punitive damages, the court of appeals concluded the trial court erred in overruling the defendant's motion for JNOV because "[t]here can be no award of punitive damages absent an award of actual damages." Id. at 262. In a footnote, the court of appeals noted, in claiming the error regarding punitive damages, the defendant stated it was error to overrule his motion for directed verdict. Id. at 262 n.2. But the court of appeals reasoned the act complained of "did not occur until the jury returned its verdict" and, therefore, "could not have been raised in the motion for directed verdict." Id.
Unlike Marquis Financial , this is not a situation in which the errors alleged by Apex regarding punitive damages occurred after the jury returned its verdict. Rather, Apex challenged the submissibility of punitive damages on the basis the limited partners failed to make a submissible case for their breach of fiduciary duty claim such that they could not recover punitive damages because the only other claim for which the limited partners recovered-a breach of contract claim-does not permit recovery of punitive damages. This is evidenced by its point relied on, in which Apex asserts the trial court erred in submitting *397 the issue of punitive damages to the jury because of the arguments it made in "Points I and II," both of which go to the submissibility of the breach of fiduciary duty claim.
Nothing, therefore, prevented Apex from raising its preserved claims of error regarding punitive damages[10] in a motion for directed verdict. Accordingly, the submissibility issues raised in Apex's JNOV motion are not preserved for appellate review.
Conclusion
Because the limited partners' motion for attorney fees was an authorized after-trial motion to amend the judgment, Apex timely filed its notice of appeal. Nevertheless, the issues of submissibility Apex raised on appeal are not preserved for appellate review in that Apex failed to raise them in a motion for directed verdict at the close of all evidence. Accordingly, the trial court's judgment is affirmed.
All concur.

The limited partners also alleged a civil conspiracy claim in their petition but dismissed it prior to trial.

While the case was pending before the court of appeals, the parties entered into a consent judgment regarding attorney fees. Accordingly, the propriety of the award of attorney fees is not before this Court.

Because July 26, 2015, was a Sunday, Apex had until July 27, 2015, to timely file its motion for JNOV. See Rule 44.01(a).

In their petition, the limited partners included attorney fees in their prayer for relief. Additionally, the record reflects limited partners asserted before, during, and after trial that they were entitled to attorney fees under the partnership agreement. In fact, the contractual provision relating to attorney fees was read into evidence at trial.

This is consistent with cases in which Missouri courts have recognized motions for attorney fees as after-trial motions to amend the judgment. See Ferguson v. Curators of Lincoln Univ. , 498 S.W.3d 481, 495 (Mo. App. 2016) ; Brady v. Curators of Univ. of Mo. , 213 S.W.3d 101, 114-15 (Mo. App. 2006) ; H.S. v. Bd. of Regents, Se. Mo. State Univ. , 967 S.W.2d 665, 674 (Mo. App. 1998) ; Lavigne v. Banks , 775 S.W.2d 347, 349 (Mo. App. 1989).

To avoid such confusion in the future as to whether a motion for attorney fees is an authorized after-trial motion, parties would be well advised to expressly state in their motions they are seeking to amend the judgment to include attorney fees.

In their brief, the limited partners assert the appeal should be dismissed because Apex failed to comply with Rule 84.04(c) in that Apex's statement of facts was not fair and concise. This Court declines to dismiss the appeal on such grounds.

Peterson v. Cont'l Boiler Works, Inc. , 783 S.W.2d 896 (Mo. banc 1990).

In its brief, Apex also asserts the award of punitive damages should be reversed because the jury awarded no actual damages on the breach of fiduciary duty claim and an award of nominal damages does not support an award of punitive damages. Apex, however, failed to raise this argument in its motion for JNOV or its motion for new trial. Issues raised for the first time on appeal are not preserved for appellate review. Seitz v. Lemay Bank & Trust Co. , 959 S.W.2d 458, 462 (Mo. banc 1998).