

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| JWSTL, LLC, | ) | No. ED110101 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1722-CC01356 |
| | ) | |
| UNION PACIFIC RAILROAD COMPANY, | ) | Honorable Michael F. Stelzer |
| | ) | |
| Respondent. | ) | Filed: March 12, 2024 |

JWSTL, LLC ("JWSTL") appeals the judgment entered after a bench trial on its claims seeking to quiet title to two railroad crossings and enjoin Union Pacific Railroad Company (the "Railroad") from closing either crossing. Because JWSTL's notice of appeal was untimely pursuant to Rule 81.04(a),[1] we must dismiss this appeal.

## I. BACKGROUND

On May 19, 2017, J.W. Aluminum, Inc. ("J.W. Aluminum") filed a petition (the "initial petition") against the Railroad which contained a total of three counts.[2] Count I, seeking to quiet title, asked the court to determine a railroad crossing at Iron Street (the "Iron Street Crossing") near J.W. Aluminum's property was a public and not a private crossing. Count II, seeking to quiet

---

[1] All references to Rule 81.04 are to the version of Missouri Supreme Court Rule 81.04 effective from January 1, 2017, to the present.

[2] J.W. Aluminum was the original plaintiff in this case until the trial court granted JWSTL's motion for substitution in June 2021 after JWSTL closed on its purchase of the property utilizing the railroad crossings subject to the underlying lawsuit.

title, similarly asked the court to determine a separate railroad crossing at Fillmore Street (the "Fillmore Street Crossing") was a public and not a private crossing. Finally, Count III requested an injunction preventing the Railroad from closing "either or both the Iron Street [C]rossing and/or the Fillmore Street [C]rossing."

Following a bench trial, the trial court entered its initial order and judgment on February 11, 2019 (the "February 2019 Judgment"). Both parties agree that the February 2019 Judgment resolved all counts in the initial petition by: (1) finding the Iron Street Crossing was a private crossing; (2) finding the Fillmore Street Crossing was a public crossing; and (3) granting an injunction to prevent closure of the Iron Street Crossing.[3] The court noted that the Railroad "desire[d] to close the Iron Street [C]rossing because of safety concerns," and "implore[d] the parties to consider alternatives to remedy [the Railroad's] safety concerns with the Iron Street Crossing." The court further stated it was "retain[ing] jurisdiction for 180 days to determine if the parties [could] agree on terms to remedy the safety concerns of the [Railroad]."

On March 13, 2019, the Railroad filed a motion to amend the injunctive relief granted in the February 2019 Judgment. On June 11, 2019, the court entered an amended order and judgment (the "June 2019 Judgment"), still granting J.W. Aluminum an injunction as to the Iron Street Crossing but modifying it to allow the Railroad to close the crossing under specific circumstances. The June 2019 Judgment made no substantive changes to the court's resolutions regarding the first two counts of the initial petition. The June 2019 Judgment again noted the Railroad's desire to close the Iron Street Crossing due to safety concerns, implored the parties to remedy those concerns, and further stated that the court "retain[ed] jurisdiction until Friday,

---

[3] The February 2019 Judgment only issued an injunction as to the Iron Street Crossing after finding it was a private crossing in resolving Count I of the initial petition. The trial court's finding that the Fillmore Street Crossing was a public crossing in resolving Count II of the initial petition effectively precluded closure by the Railroad, making an injunction to prevent closure of the Fillmore Street Crossing unnecessary.

2

August 9, 2019, to determine if the parties can agree on terms to remedy the safety concerns of the [Railroad]."

On July 10, 2019, the Railroad filed a motion to amend the injunctive relief granted in the June 2019 Judgment. The trial court never entered a ruling on the Railroad's July 2019 motion to amend.

The court subsequently met with the parties numerous times and continued to schedule case management conferences through May 2021, attempting to resolve the Railroad's ongoing safety concerns regarding the Iron Street Crossing. In February 2020, the Railroad filed a motion to dissolve the court's injunction due to a change in circumstances, and in March 2021, the Railroad filed a renewed motion to dissolve the injunction after learning that J.W. Aluminum had closed its operating plant and was selling the property which previously utilized the Iron Street Crossing to JWSTL. The Railroad argued the injunction should be dissolved because circumstances had now changed, namely that J.W. Aluminum no longer required use of the Iron Street Crossing – which was subject to the injunction – to access its property and operate its business, and because the future use of the property was unknown.

In June 2021, after closing on its purchase of the property which utilized the Iron Street Crossing, JWSTL filed a motion for substitution to become the party of interest in the underlying action, which the trial court granted. On July 2, 2021, the court then granted the Railroad's motion to dissolve the injunction (the "July 2021 Judgment"), primarily citing the fact that JWSTL was not utilizing the Iron Street Crossing to operate its business. On August 2, 2021, JWSTL filed a motion[4] asking the court "[to] amend the July 2021 [Judgment] disposing of all issues and claims between the parties and denominating [the July 2021 Judgment] as final for purposes of

---

[4] JWSTL's August 2, 2021, motion was initially submitted to the court as a "motion to amend order and judgment and for reconsideration." However, JWSTL filed a memorandum shortly thereafter striking the paragraphs addressing reconsideration and "withdraw[ing] its request for reconsideration."

3

appeal." On November 2, 2021, the court denied JWSTL's motion, and eight days later JWSTL filed its notice of appeal. Subsequently, the Railroad filed a motion to dismiss JWSTL's appeal on the grounds our Court lacks appellate jurisdiction. This motion was taken with the case.

## II. DISCUSSION

JWSTL's sole point on appeal argues the trial court erred in finding the Iron Street Crossing was a private crossing in the June 2019 Judgment. However, before we can consider the merits of JWSTL's point on appeal, we must determine whether the Railroad's motion taken with the case is dispositive.

### A. The Railroad's Motion to Dismiss for Lack of Appellate Jurisdiction

The Railroad's motion taken with the case requests dismissal of JWSTL's appeal, claiming this Court lacks appellate jurisdiction. The Railroad primarily argues JWSTL failed to file a timely notice of appeal as to both the June 2019 Judgment and the July 2021 Judgment.

#### 1. Finality of the June 2019 Judgment

As an initial matter, the parties in this case dispute various aspects of the finality of the trial court's June 2019 Judgment. A final judgment is a prerequisite to appellate review. *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). For purposes of section 512.020(5),[5] which is the statute applicable to JWSTL's appeal of the June 2019 Judgment,[6] a judgment is final and appealable "if it disposes of all claims (or the last pending claim) in a lawsuit." *See Jefferson*

---

[5] All statutory references are to RSMo 2016 (effective from August 28, 2004, to the present).
[6] Under section 512.020:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any:
> (1) Order granting a new trial;
> (2) Order refusing to revoke, modify, or change an interlocutory order appointing a receiver or receivers, or dissolving an injunction;
> (3) Order granting or denying class action certification . . .;
> (4) Interlocutory judgments in actions of partition which determine the rights of the parties; or
> (5) Final judgment in the case or from any special order after final judgment in the cause . . ..

Subsection (5) is the only subsection of the statute that could potentially apply to the trial court's June 2019 Judgment.

*County 9-1-1 Dispatch v. Plaggenberg*, 645 S.W.3d 473, 475 (Mo. banc 2022); *see also* section 512.020(5). In other words, determining whether a judgment is final for purposes of appellate review first requires an analysis of whether the judgment disposes of all claims by and against all parties in the lawsuit. *Plaggenberg*, 645 S.W.3d at 476.

The initial petition in this case contained three counts, with Counts I and II essentially asking the trial court to determine whether the two crossings at issue in the case were public or private, and Count III requesting an injunction to prevent closure of either crossing. Following a bench trial on the merits of the case, the June 2019 Judgment (which amended the February 2019 Judgment) resolved all claims by and against all parties involved in the underlying lawsuit by: (1) finding the Iron Street Crossing was a private crossing; (2) finding the Fillmore Street Crossing was a public crossing; and (3) granting an injunction with respect to closure of the Iron Street Crossing. *See id*. Accordingly, the trial court's June 2019 Judgment was a final, appealable judgment. *See id*.

Despite conceding that the trial court "resolv[ed] all counts in the [initial] petition" in its June 2019 Judgment, JWSTL argues the judgment was not final because it left the Railroad's safety concerns regarding the Iron Street Crossing unresolved. However, a judgment can be final regarding all claims raised in the pleadings while nonetheless leaving incidental matters for future determination by the court. *See, e.g., West Quincy Properties, LLC v. Straightedge, Inc.*, 628 S.W.3d 799, 800-03 (Mo. App. E.D. 2021) (holding a judgment was final because, *inter alia*, it determined all issues raised by the pleadings, even though the judgment stated the trial court would hold further proceedings to determine who should receive funds paid into the court's registry); *Peet v. Carter*, 278 S.W.3d 707, 710 (Mo. App. E.D. 2009) (distinguishing between judgments on claims in the underlying petition and judgments ruling on miscellaneous issues). In this case, the trial court's June 2019 Judgment resolved all claims between the parties when it

5

determined whether the two crossings at issue were public or private, resolving Counts I and II, and when it granted an injunction resolving Count III. The Railroad's safety concerns were not an issue raised in the pleadings, and therefore any lack of resolution as to these concerns had no effect on the finality of the June 2019 Judgment. *See id.*

Under Rule 75.01,[7] a trial court retains control over its judgments for thirty days after entry, during which time it may "vacate, reopen, correct, amend, or modify its judgment." *Id.*; *Heifetz v. Apex Clayton, Inc.*, 554 S.W.3d 389, 393 (Mo. banc 2018) (quoting Rule 75.01). When no authorized after-trial motion is filed, a judgment becomes final at the expiration of thirty days after its entry. Rule 81.05(a)(1).[8] However, when a party files an authorized after-trial motion, the judgment becomes final at the earlier of the following:

> (A) Ninety days from the date the last timely motion was filed, on which all motions not ruled shall be deemed overruled; or
> (B) If all motions have been ruled, then the date of ruling of the last motion to be ruled or thirty days after entry of judgment, whichever is later.

Rule 81.05(a)(2); *Heifetz*, 554 S.W.3d at 393.

In this case, the trial court entered the June 2019 Judgment on June 11, 2019. Within thirty days, on July 10, 2019, the Railroad filed a motion to amend the injunctive relief granted in the June 2019 Judgment. The Railroad's motion was an authorized after-trial motion which extended the date on which the June 2019 Judgment became final for up to ninety days. *See id.* The trial court never ruled on the Railroad's July 2019 motion to amend. Accordingly, the June 2019 Judgment became final on October 8, 2019, ninety days after the Railroad filed the motion to amend, at which point the motion was deemed overruled. *See* Rule 81.05(a)(2)(A).

---

[7] All references to Rule 75.01 are to the version of Missouri Supreme Court Rule 75.01 effective from January 1, 1981, to the present.

[8] All references to Rule 81.05 are to the version of Missouri Supreme Court Rule 81.05 effective from January 1, 2000, to the present.

JWSTL claims the June 2019 Judgment did not become final on October 8, 2019, because the trial court was "unequivocal . . . that it was retaining jurisdiction" beyond this date and the parties "acquiesced" to this jurisdiction by continuing to appear before the court thereafter in attempts to resolve the Railroad's safety concerns. However, neither a trial court's attempts to retain jurisdiction or the parties' acquiescence to any continued jurisdiction can alter the date on which a judgment becomes final. *See Lacher v. Lacher*, 785 S.W.2d 78, 80 (Mo. banc 1990) ("[w]e know of no lawful method which would authorize the trial court to hold in abeyance [a] judgment which had become final") (citation and internal quotations omitted); *State v. Joordens*, 347 S.W.3d 98, 101 (Mo. App. W.D. 2011) (finding a party's acquiescence in the trial court's actions beyond its jurisdiction did not endow the court with authority); *State ex rel. Abdullah v. Roldan*, 207 S.W.3d 642, 646 (Mo. App. W.D. 2006) ("the language of the trial court purporting to allow the court to retain jurisdiction is without effect") (citations and internal quotations omitted). Accordingly, JWSTL's argument that the trial court "retain[ed] jurisdiction" and thus delayed finality of the June 2019 Judgment has no merit.

### 2.      Timeliness of JWSTL's Appeal

"The timely filing of a notice of appeal is an indispensable prerequisite to appellate jurisdiction and a vital step for perfecting an appeal." *Rutherford v. Davis*, 458 S.W.3d 456, 461 (Mo. App. E.D. 2015) (citation and internal quotations omitted). When a notice of appeal is untimely, this Court lacks jurisdiction and must dismiss the appeal. *Thorp v. Thorp*, 390 S.W.3d 871, 875 (Mo. App. E.D. 2013). The notice of appeal must be filed no later than ten days after the judgment or order appealed from becomes final. *Id*.; Rule 81.04(a).

As outlined above, the June 2019 Judgment became final on October 8, 2019, which means JWSTL was required to file a notice of appeal no later than ten days thereafter, on or before October 18, 2019. *See id*. JWSTL's notice of appeal in this case was not filed until November 10,

2021, well after the deadline. Because the notice of appeal was untimely filed, we must dismiss this appeal. *See Thorp*, 390 S.W.3d at 875; *see also Rutherford*, 458 S.W.3d at 461.

**3.      JWSTL's Purported Appeal of the July 2021 Judgment**

JWSTL attempts to remedy the jurisdictional issues with its appeal by claiming the July 2021 Judgment dissolving the injunction was not a separate judgment but rather an amendment of the trial court's earlier June 2019 Judgment. Specifically, JWSTL argues the trial court's July 2021 Judgment "served to amend" the June 2019 Judgment and therefore "extended jurisdiction to this Court to consider the merits" of the June 2019 Judgment.

Generally, a trial court no longer has authority to modify a judgment after the judgment becomes final. *C.L. Smith Indus. Co., Inc. v. Matecki*, 914 S.W.2d 873, 877 (Mo. App. E.D. 1996). However, there is an exception to this general rule, pursuant to which a trial court has the authority to vacate or modify an injunction in order to avoid unjust or absurd results when, *inter alia*, a change occurs in the factual circumstances that gave rise to the injunction's existence. *Id*. Furthermore, a trial court has the authority to terminate or modify its injunction simply by virtue of its inherent power over the order. *Wagner v. Nolan*, 644 S.W.3d 568, 570 n.2 (Mo. App. W.D. 2022).

In this case, the language of the July 2021 Judgment made clear that it was an order and judgment dissolving the injunction initially granted in the June 2019 Judgment "based on [a] change in circumstances," namely that JWSTL, unlike the prior plaintiff and owner of the property, J.W. Aluminum, did not utilize the Iron Street Crossing to operate its business. As such, the trial court's July 2021 Judgment dissolving the injunction was an appealable final judgment, separate from the June 2019 Judgment which granted the injunction. *See* section 512.020(2) (permitting appeal from an order dissolving an injunction); *Glendale Shooting Club, Inc. v. Landolt*, 661 S.W.3d 778, 781-82 (Mo. banc 2023) (referring to the dissolution of an injunction as

8

the "set[tting] aside [of] a final judgment that imposed injunctive relief"). Accordingly, the trial court's July 2021 Judgment did not function to amend the June 2019 Judgment or alter the date on which the June 2019 Judgment became final for purposes of appeal.[9] *See id*.; Rule 81.05(a).

### 4. Conclusion

Based on the foregoing, we grant the Railroad's motion to dismiss taken with the case. Because the notice of appeal was untimely filed, this Court lacks jurisdiction and must dismiss JWSTL's appeal. *See Thorp*, 390 S.W.3d at 875; *see also Rutherford*, 458 S.W.3d at 461.

### III. CONCLUSION

The appeal is dismissed.

_____
ROBERT M. CLAYTON III, Presiding Judge

Philip M. Hess, J., and
Cristian M. Stevens, J., concur.

---

[9] Operating under the assumption that the July 2021 Judgment "served to amend" the June 2019 Judgment, JWSTL also argues its appeal was timely as to the July 2021 Judgment. To the extent JWSTL advances this argument even though the July 2021 Judgment did not amend the June 2019 Judgment, this Court need not address the timeliness of JWSTL's appeal as to the July 2021 Judgment. Under Missouri Supreme Court Rule 84.13(a) (effective from July 1, 2012, to the present), this Court is not to consider any claims of error which are not properly developed in the argument section of an appellant's brief on appeal. *Id*.; *Unifund CCR Partners v. Myers*, 563 S.W.3d 740, 742 (Mo. App. E.D. 2018). JWSTL makes no argument on appeal alleging any error by the trial court in dissolving the injunction in the July 2021 Judgment, but rather JWSTL's only point on appeal focuses solely on the propriety of the trial court's finding in its *June 2019 Judgment* that the Iron Street Crossing was a private crossing. Assuming *arguendo* that this appeal was timely as to the July 2021 Judgment, any argument as to the propriety of the July 2021 Judgment has been abandoned because JWSTL fails to claim any error by the trial court in dissolving the injunction. *See id*.